**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MATHEWS ARCHERY, INC.<br>919 River Road,<br>Sparta, Wisconsin 54656<br><br><br>      Plaintiff,<br><br>v.<br><br>REDLINE ARCHERY, LLC<br>264 East Garfield Road,<br>Aurora, Ohio, 44202<br><br>c/o Statutory Agent:<br>Greg Raymer<br>264 East Garfield Road,<br>Aurora, Ohio, 44202<br><br>      Defendant. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Mathews Archery, Inc. ("Mathews"), by and through its attorneys, for its Complaint against Redline Archery, LLC ("Redline") alleges as follows:

**THE PARTIES**

1. Mathews is a corporation organized under the laws of the State of Wisconsin and has a principal place of business at 919 River Road, Sparta, Wisconsin 54656.

2. On information and belief, Redline is a limited liability company organized under the laws of the State of Ohio with a principal place of business located at 264 East Garfield Road, Aurora, Ohio, 44202.

3. Redline's filings with the Ohio Secretary of State designate that it may be served with process through its registered agent:

1

GREG RAYMER
264 E. GARFIELD ROAD
AURORA, OH 44202

## JURISDICTION AND VENUE

4.     This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Mathews asserts claims arising under an Act of Congress relating to patents and one related to trademarks, namely, 35 U.S.C. § 271 and 15 U.S.C. § 1114. This Court has pendent jurisdiction over the state law claims.

5.     Redline is subject to this Court's personal jurisdiction because Redline resides in and engages in continuous and systematic business within this judicial district including maintaining a principal place of business in the state of Ohio at 264 East Garfield Road, Aurora, Ohio, 44202.

6.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and 1400(b) and Loc.R. 3.8(a), because, on information and belief: a) Redline resides in the Northern District of Ohio, b) Redline's principal place of business is in the Northern District of Ohio, c) Redline has committed acts of patent infringement in the Northern District of Ohio, d) Redline has committed acts of trademark infringement in the Northern District of Ohio, and e) Redline is subject to personal jurisdiction in Ohio as set forth above, thereby making Redline a resident of this district under 28 U.S.C. § 1391(c)(2).

## BACKGROUND

**I.    Mathews**

7.     Mathews was founded in 1992 by Matt McPherson and is renowned for its high-performance compound bows and archery accessories. Mathews is a well-known innovator in the archery industry. For example, Mathews first revolutionized the industry by introducing its SoloCam technology, which significantly improved compound bow accuracy, speed, and stealth.

2

Prior to the SoloCam, the tuning of a compound bow depended on keeping the bow's two cams in sync. Mathews' SoloCam technology eliminated that problem by, in part, using a novel idler wheel arrangement, while also creating a lighter, smoother, and more forgiving bow setup.

8.     One industry publication has stated that "Matt McPherson's SoloCam technology is unquestionably one of most innovative ideas bowhunting has ever seen."[1]

9.     Mathews has continued this legacy of innovation, and holds a number of patents, including multiple design patents on a novel stabilizer design for bows.

### A.  Mathews' '588 Patent

10.     One such innovation from Mathews relates to bows designed to accommodate archery accessories. U.S. Patent No. 11,885,588 (the "**'588 Patent**") addresses a problem where repeated removal and reinstallation of an archery accessory leads to the specific placement and orientation of the accessory changing with respect to the bow. These small changes can have an outsized negative impact on performance because the placement and orientation of certain bow accessories directly impacts accuracy—which is of critical importance to bowhunters.

11.     The '588 Patent addresses this problem by including one or more apertures in the riser of the bow configured to accommodate archery accessories. The interaction between the accessory and the receiving aperture allows for precise control of accessory placement and orientation. An annotated version of FIG. 1 from the '588 Patent is copied below, with the riser highlighted in yellow and the accessory highlighted in red to show their interaction in the patented system.

---

[1] *See* Jeff Waring, *Celebrating 30 Years of Mathews Archery*, December 07, 2022, https://www.bowhunter.com/editorial/30-years-mathews-archery/466981#replay.



*Figure 1. Annotated copy of FIG. 1 of the '588 Patent with riser 12 highlighted in yellow and accessory 40 highlighted in red.*

12.    The technology of the '588 Patent advantageously allows for a bow accessory to consistently be removed and reinstalled in the same precise location and thus avoid undesired changes in accessory placement and orientation. In addition to the '588 Patent, Mathews is pursuing additional patent protection for this technology in other applications currently pending before the United States Patent and Trademark Office.

### B.  Mathews' Bridge-Lock® Stabilizer

13.    In addition to bows, Mathews sells accessories designed to work with the patented system described above. One example is a stabilizer. This accessory is designed to improve the balance and stability of the bow, enhancing the user's accuracy and consistency. For example, the stabilizer acts as a counterbalance to the bow, making it steadier and easier to aim. As another

example, the stabilizer absorbs vibrations generated when the arrow is released, reducing noise and minimizing hand shock.

14.     Mathews' novel stabilizer has a bar with top and bottom rails with a distinct ornamental design. Most archery bow stabilizer bar rails tend to be round and screw into the bow:



*Figure 2. Exemplary stabilizers with dampers/damper housings greyed out to highlight the round stabilizer bars with ends designed to be screwed into the bow.*

15.     In contrast, Mathews developed a design with a completely different ornamental appearance that works with its patented bow technology discussed above. Mathews sells its stabilizer under the trademark "Bridge-Lock." The Mathews Bridge-Lock® Stabilizer, with its ornamental archery bow stabilizer bar having the distinct top and bottom rail designs shown below, was released in 2022 and quickly became a commercial success.



*Figure 3. Example of Mathews Bridge-Lock® Stabilizer taken from Mathews' website at https://mathewsinc.com/products/bridge-lock-stabilizer (last accessed 12/26/24) with the damper and damper housing greyed out to highlight the top and bottom rails of the archery bow stabilizer bar.*

16.     Mathews has obtained multiple design patents on its Bridge-Lock® Stabilizer accessory, including U.S. Design Patent Nos. D1,049,295 (Exhibit A), D1,049,293 (Exhibit B), and D1,049,294 (Exhibit C) (the "**Asserted Patents**").

17.     Mathews provides notice that its products are patented, including the Mathews Bridge-Lock® Stabilizer, at https://patents.mathewsinc.com/.

### C.  Mathews' Bridge-Lock® Trademark

18.     Mathews designs, develops, manufactures and markets archery bows and equipment, including archery bow stabilizers. As a result of its work for decades, Mathews is one of the largest manufacturers of archery products.

19.     Mathews products include various products sold under the BRIDGE-LOCK ® trademark, such as the BRIDGE-LOCK ® stabilizers discussed above and related goods such as BRIDGE-LOCK v-bars and BRIDGE-LOCK stabilizer weights, as well as archery bows:





*Figure 4. Examples of Mathews Bridge-Lock ® Stabilizer and related products taken from Mathews' website at https://mathewsinc.com/products/bridge-lock-stabilizer (last accessed 1/8/25).*

20.     In connection with pioneering the development of Mathew's new and improved archery bows with an aperture in the riser of the bow for accessories, Mathews selected and adopted the mark BRIDGE-LOCK to identify and present these innovative products to its customers and potential consumers in the field of archery. Matthews has used the mark BRIDGE-LOCK for stabilizers, v-bars, stabilizer weights and related products, such as archery bows, continuously from at least as early as October 21, 2021 to the present.

7

21.     More specifically, Matthews first used the BRIDGE-LOCK trademark on an archery bow in conjunction with sight technology at least as early as October 2021; the products were archery bows with a mounting hole in the riser and a sight designed to fit in that hole. Mathews incorporated improved stabilizers one year later that Matthews likewise marketed bearing or in connection with the mark BRIDGE-LOCK, as well as INTERLINK having a date of first use at least as early as August 03, 2022.

22.     Since at least as early as October 2021, and in combination with its presence on social media such as Instagram, Facebook, Vimeo, YouTube and X, Mathews has owned and operated a website at https://mathewsinc.com/ which provides information about Mathews and its BRIDGE-LOCK products and is operational 24 hours a day 7 days a week. This website and these social media pages serve as important channels through which Mathews markets BRIDGE-LOCK archery products, including stabilizers and related products to customers, consumers and general public; they receive many visits each day by customers and consumers throughout the United States.

23.     Mathews also operates an authorized retailer program. Mathews Authorized Retailers, which are independently owned and operated, are carefully selected to sell and service all of Mathews product lines, including BRIDGE-LOCK ® stabilizers and related products. The application & selection process of these Authorized Retailers includes a complete review of facilities, experience, business goals, financial strength and business plans. A demonstrated passion for archery, bowhunting and extraordinary customer service play an important role in gaining entry into Mathews authorized retailer program. Defendant is not a member of Mathews' retailer program.

24.     The mark BRIDGE-LOCK and variants have been extensively used by Mathews in United States interstate commerce on products, packaging and in connection with marketing, advertising and promotion of Mathews' products online, nationwide printed publications, trade and consumer magazines, email campaigns, sponsored advertisements, through direct mail and other ways customary in the trade. The BRIDGE-LOCK brand is prominently presented on Mathews' archery products, such as stabilizers and related products, advertisements, product packaging, manuals, and technical and informational literature.

25.     Long prior to any use that Redline might claim, Mathews, or its affiliate, has owned the trademark BRIDGE-LOCK and variants thereof. In addition to its extensive common law use and trademark rights in the mark BRIDGE-LOCK, Mathews is the owner by assignment of a United States trademark registration for its inherently distinctive, commercially strong and well-known mark BRIDGE-LOCK, including the following:

| Mark | Registration No. | Reg. Date and Filing Date | Goods/ Services & First Use |
|------|------------------|---------------------------|------------------------------|
| BRIDGE-LOCK | 7629396 | <u>Registered</u>: December 31, 2024<br><br><u>Filed</u>: December 22, 2022 | (Int'l Class: 28)<br>Archery bows; Archery equipment, namely, archery bow sights, archery bow stabilizers<br>First Use: October 25, 2021;<br>First Use in Commerce: October 25, 2021; |

26.     The above trademark registration is valid, subsisting, unrevoked, and thus constitutes prima facie evidence of the validity of the mark BRIDGE-LOCK and its registration, Mathews' exclusive ownership of the mark, and its exclusive right to use such mark on or in connection with the products/services stated in the registration. This registration along with Mathews' common law use and rights in the mark BRIDGE-LOCK and variants are hereinafter

referred to individually and/or collectively as the "**BRIDGE-LOCK Mark**" or "**BRIDGE-LOCK Brand**," unless otherwise specified.

27.     Well before Redline's adoption of the infringing mark at issue, Mathews, itself and/or through its predecessor, has extensively and continually used, advertised and promoted the BRIDGE-LOCK Mark in interstate commerce throughout the United States for over three (3) years in connection with archery products.

28.     Matthews has expended substantial amounts of time, effort, resources, and money over these years ensuring that relevant consumers, customers and the general purchasing public associate the BRIDGE-LOCK Mark exclusively with Mathews. Over the last several years, Mathews has expended significant amounts of dollars each year in connection with marketing, advertising and promoting its BRIDGE-LOCK Mark in connection with its archery products, including, stabilizers and related wares across the United States. Mathews' widespread uses of the BRIDGE-LOCK Mark to identify and distinguish its distinctive, high-quality products from others in the marketplace has resulted in substantial commercial impressions of the BRIDGE-LOCK Brand, which is encountered each day by businesses, customers, consumers and potential purchasers of Mathews' archery products. Matthews' use reinforces the notoriety, distinctiveness and commercial strength of the BRIDGE-LOCK Mark.

29.     Matthews has expended substantial amounts of time, effort and resources over the years ensuring that the purchasing public associates the BRIDGE-LOCK Mark exclusively with Mathews. Indeed, over the past three (3) years, Mathews has expended millions of dollars in the marketing, advertising and promoting the BRIDGE-LOCK Mark in connection with Mathew's innovative stabilizers and related products in the United States.

30.     As a result of the above, and the care and skill exercised by Mathews in the marketing and sale of its BRIDGE-LOCK products, the supervision and control exercised by Mathews over the nature and quality of its products offered under its BRIDGE-LOCK Mark, and the extensive marketing, advertising, sale and public acceptance thereof, the BRIDGE-LOCK Mark has acquired outstanding recognition symbolizing the immense goodwill that Mathews has created throughout the United States and within this judicial district.

31.     Together with its reputation for excellence, Mathews has built up tremendous goodwill in the BRIDGE-LOCK Mark and established an enormous level of pertinent consumer acceptance and consumer recognition of the BRIDGE-LOCK Brand, which became highly regarded and well-known before Redline began violating Mathews' exclusive trademark rights. Indeed, the BRIDGE-LOCK Mark is inherently distinctive, has acquired substantial commercial strength and possess very strong secondary meaning in the minds of the relevant purchasing consumers, has become well-known, and serves uniquely to identify Mathews' archery products and related goods. The BRIDGE-LOCK Brand has become an asset of incalculable value as a symbol of Mathews' archery products and goodwill.

32.     No entities other than Mathews is authorized to use the BRIDGE-LOCK Mark in connection with the development, marketing, sale, distribution or advertising of goods and services in the field of archery and bow hunting.

33.     Further, Redline is not authorized or licensed by Mathews to use the BRIDGE-LOCK Mark or any confusingly similar marks such as BRIDGE or variants in the United States.

## II.    Redline

34.     Redline sells archery products through multiple channels, including from its website at https://redlinebowhunting.com/.



*Figure 5. Screenshot of Redline Archery Products homepage taken from*
*https://redlinebowhunting.com/ (last accessed 1/8/25).*

### A. Redline's Knockoff Stabilizer Design

35.     One product sold by Redline is a line of knockoff stabilizers for use with Mathews'

patented bows, which it calls the "Bridge Carbon Hunting Stabilizer" or "Bridge Series" stabilizer.

Below is a side-by-side comparison of the Redline Knockoff Stabilizer (left) and the Mathews

Bridge-Lock® Stabilizer (right) showing ornamental similarities between the products.



*Figure 6. Redline's Bridge Carbon Hunting Stabilizer (left) taken from*
*https://lancasterarchery.com/products/redline-bridge-12-carbon-hunting-*

*stabilizer?utm_source=Social&utm_medium=YouTube&utm_campaign=Redline+Bridge+12-inch+stabilizer (last accessed 1/9/25) and Mathews' Bridge-Lock® Stabilizer (right) taken from https://mathewsinc.com/products/bridge-lock-stabilizer (last accessed 12/26/24).*

36.     In a video advertising the product, an archery equipment supplier describes that the Bridge Carbon Hunting Stabilizer is a "bridge lock bar" and that "bridge lock is going to be any of those new Mathews bows that are going to accept that bridge lock stabilizer."[2] Redline sells the Bridge Carbon Hunting Stabilizer in 8- and 12-inch models (the "Redline Accused Products").

37.     Upon information and belief, Redline was aware of the Mathews Bridge-Lock® Stabilizer design when it made the Redline Accused Products.

38.     Upon information and belief, Redline made the Redline Accused Products by copying elements of the Mathews Bridge-Lock® Stabilizer design.

## B.  Redline's Knowledge of the Asserted Patents

39.     In a January 2, 2024 Letter, Mathews identified (and attached) the Asserted Patents to Redline and informed Redline that its "'Bridge series'" stabilizers . . . infringe the Mathews Patents." In the same letter, Mathews included exemplary evidence of infringement, including side-by-side comparisons of the Asserted Patents and the Redline Accused Products. Mathews demanded that Redline cease all infringing activities and marketing of the Redline Accused Products—specifically noting that Redline should not exhibit "the Infringing Stabilizers at the ATA Show."

40.     Redline has not agreed to cease all infringing activities.

41.     Further, Mathews provides notice of its patent rights for its products at https://patents.mathewsinc.com/. The Mathews Bridge-Lock® Stabilizer notice is as follows:

---

[2] *See* Lancaster Archery Supply, *Redline Bridge 12″ Carbon Hunting Stabilizer*, https://lancasterarchery.com/products/redline-bridge-12-carbon-huntingstabilizer?utm_source=Social&utm_medium=YouTube&utm_campaign=Redline+Bridge+12-inch+stabilizer at 00:29.

**Bridge-Lock Stabilizer:** Protected by U.S. Patents 11,885,588, D1049293, D1049294, D1049295, D1050334, D1050335, D1052033
Additional patents may be pending in the U.S. and elsewhere.

*Figure 7. Excerpt from https://patents.mathewsinc.com/ (last accessed 12/26/24) showing the entry for the "Bridge-Lock Stabilizer" which includes the Asserted Patents.*

42.     Thus, Redline knew or should have known that the Mathews' Bridge-Lock® Stabilizer design was protected by one or more of the Asserted Patents shortly after their issuance. Further, Redline knew or should have known that the Redline Accused Products infringed the Asserted Patents.

### C.  Redline's Trademark Infringement

43.     On information and belief, long after Mathews began using the BRIDGE-LOCK Mark, Redline adopted and started marketing, advertising, offering of sale and/or selling archery bow stabilizers to customers and consumers under the name and mark BRIDGE, BRIDGE Series and variants. Representative examples of such use follow:





*Figure 8. Examples of Redline's use of "Bridge" trademark taken from Redline's website at https://redlinebowhunting.com/collections/bow-stabilizer/products/rl-bridge-12-stabilizer (last accessed 1/9/25) and https://redlinebowhunting.com/search?q=bridge&search= (last accessed 1/9/25).*

44.     These are just a few representative examples. Online web pages and social media accounts also feature Redline's unauthorized use of BRIDGE, BRIDGE Series and variants. Packaging for Redline's products also make unauthorized use of "BRIDGE" and/or variants. (Hereinafter Redline's infringing names and marks BRIDGE, BRIDGE Series and variants shall be referred to individually and/or collectively as the "Infringing BRIDGE Marks", unless otherwise specified.)

45.     Through its website, and long after Mathews' first use of the BRIDGE-LOCK Mark, Redline has been using the Infringing Bridge Marks to market, advertise and promote archery bow stabilizers and related products which, if not directly competitive with, are related and complementary to those of Mathews bearing the BRIDGE-LOCK Mark.

46.     Indeed, Redline intentionally emphasizes, highlights and draws a false connection and association to Mathews and its BRIDGE-LOCK offers by claiming that its stabilizers are "Bridge-Lock Compatible":



*Figure 9. Example of Redline's use of "Bridge" trademark taken from Redline's website at https://redlinebowhunting.com/collections/bow-stabilizer/products/rl-bridge-12-stabilizer (last accessed 1/9/25).*

47.     On information and belief, beyond use on its website, Redline is also marketing and selling stabilizers in connection with the Infringing BRIDGE Marks through Amazon, having established a storefront on that e-commerce site:



16

*Figure 10. Example of Redline's use of "Bridge" trademark from Amazon website at https://www.amazon.com/stores/page/3911B740-7C43-4FFD-B0EC-5216AE0E34CB?ingress=2&visitId=1f60010a-96a0-472e-9649-5c33fc82817b&store_ref=bl_ast_dp_brandLogo_sto&ref_=ast_bln (last accessed 1/9/25).*

48.     On information and belief, Redline is also improperly using the Infringing BRIDGE Marks on social media like YouTube, at trade shows and in other ways in connection with the marketing of stabilizers for archery and bowhunting.

49.     On information and belief, Redline's purported Infringing BRIDGE Marks are confusingly similar to the BRIDGE-LOCK Mark and are likely to and will inevitably confuse relevant consumers as to the source, association, authorization or sponsorship of Redline's business and products with Mathews, when there is no such connection.

50.     Redline's prominent and repeated use of the Infringing BRIDGE Marks similar to or colorable imitations of Mathews BRIDGE-LOCK Mark on its websites, Amazon storefront, social media and other marketing materials, and for similar, related or complementary, if not identical, goods/services is intended to cause and is likely to cause confusion among relevant consumers as to the source, sponsorship, affiliation, connection or association of the products and services offered by Redline with Mathews.

51.     Redline's use of the Infringing BRIDGE Marks to falsely represent and convey that Redline and/or Redline's business and products are affiliated with, sponsored or authorized by Mathews, and/or to trade off the extensive goodwill Matthews built in the BRIDGE-LOCK Marks, is an effort by Redline to wrongly benefit from Mathew's well-known reputation and goodwill.

52.     Redline's wrongful use of the Infringing BRIDGE Marks in connection with marketing, advertising, promoting, offering to sell and selling products/services similar, related or complementary to those of Mathews under the BRIDGE-LOCK Mark to consumers through similar if not overlapping channels of trade is likely to mislead consumers as to the source of

Redline's products, is likely to cause consumer confusion or mistake, and deceive consumers into believing that Redline's goods and services are affiliated with, connected with, associated with, or endorsed by Mathews—when they are not.

53.     On information and belief, Redline's unauthorized use of the Infringing BRIDGE Marks are likely to and will inevitably harm and diminish Mathews' goodwill, business reputation, and the demand for its products and services offered under and in connection with the BRIDGE-LOCK Mark.

54.     On information and belief, because of Mathews' long, extensive and substantially exclusive use and/or sale of stabilizers and related products in the field of archery and bowhunting under the BRIDGE-LOCK Mark, and its significance as a business in the industry, Redline was or should have been, at all times, fully aware of the BRIDGE-LOCK Mark and had constructive notice of such rights due to Mathews' federal application to register and registration for the BRIDGE-LOCK Mark.

55.     Notwithstanding Mathews' well-known prior use and registration of and rights in and to the BRIDGE-LOCK Mark, Redline—without the consent of Mathews—adopted and caused to be used in interstate commerce, the Infringing BRIDGE Marks on or in connection with the marketing and sale of stabilizers and related products in the field of archery and bowhunting, which are products identical, similar, complementary and/or related to Mathews' products and services in a manner not authorized by Mathews.

56.     On January 2, 2025, after learning of Redline's use of the infringing BRIDGE Marks, Mathews sent a letter to Redline by email and by Federal Express courier providing express notice of its intellectual property rights, including the BRIDGE-LOCK Brand and that Redline's use of the Infringing BRIDGE Marks was unauthorized and infringed Mathews' trademark rights.

In that letter, Mathews requested that Redline cease all use of the infringing designation "Bridge Series," including in connection with its products, remove all references to it from Redline's marketing materials, both electronic and print, and confirm in writing that it ceased use of the name.

57.     Redline has not agreed to cease and desist from using the Infringing BRIDGE Marks, and, in fact, continues to use such violative marks on its website.

58.     Redline's bad faith and willful and wanton wrongful actions as described above (1) establish that it seeks to profit from Mathews' well-established business reputation and goodwill inherent in its BRIDGE-LOCK Mark and represent blatant violations of the United States Trademark ("Lanham") Act 15 U.S.C. §1051, et seq.; (2) are likely to cause confusion, mistake or otherwise deceive relevant customers and consumers throughout the United States; (3) constitute a false designation of the origin of Redline's archery products; (4) suggest a non-existent and false connection or association between Redline, its products bearing the Infringing BRIDGE Marks and Mathews; (5) are likely to falsely suggest that Mathers has sponsored, licensed or approved of Redline's products bearing the Infringing BRIDGE Mark; and (6) are likely not only to damage the value of the BRIDGE-LOCK Mark but also to undermine and diminish their effectiveness as indications of exclusive source and value and to remove from Mathews its ability to control its own marks and goodwill.

59.     On information and belief, Redline's acts as alleged, including the use of the Infringing BRIDGE Marks, have been and are being committed with knowledge and willful intent to cause confusion or to cause mistake or to deceive, and/or to profit therefrom, as at the demise of Mathews.

60.     Mathews has been and, absent relief from this Court, will continue to be irreparably harmed and damaged in that its BRIDGE-LOCK Mark has been infringed as a result of Redline's wrongdoing.

### COUNT I: INFRINGEMENT OF U.S. DESIGN PATENT NO. D1,049,295

61.     Mathews incorporates by reference the allegations in Paragraphs 1-60 above.

62.     Mathews Archery, Inc. is the owner by assignment of the '295 Patent.

63.     The '295 Patent was duly and legally issued on October 29, 2024.

64.     The '295 Patent protects the ornamental design of the top rail of the archery bow stabilizer bar.

65.     An exemplary figure from the '295 Patent is shown below with solid lines delineating the claimed design:



*Figure 11. Figure 1 from the '295 Patent.*

66.     The Mathews' Bridge-Lock® Stabilizer embodies the claimed ornamental design of the '295 Patent:

20

| Mathews' Bridge-Lock® Stabilizer | '295 Patent |
|---|---|
|  | |

*Figure 12. Top view (left) of the Mathews' Bridge-Lock® Stabilizer; FIG. 1 of the '295 Patent (right).*

67.     Redline has and/or continues to make, import, sell, and/or offer to sell the Redline

Accused Products which an ordinary observer would believe are substantially similar to the design

claimed by the '295 patent.

| Exemplary Redline Accused Product | '295 Patent |
|---|---|
|  | |



FIG. 2

FIG. 3



68.     Redline does not have a license to practice the designs claimed in the '295 patent.

69.     Redline makes, imports, sells, and/or offers for sale the Redline Accused Products, thereby infringing the '295 patent.

70.     Upon information and belief, based at least on Redline's knowledge of Mathews' design patents through its dealings with Mathews (*e.g.*, at least the January 2 letter), Redline had actual knowledge of the '295 patent and that its acts of importing, marketing, advertising, selling, and/or offering for sale the Redline Accused Products constituted infringement of the '295 patent.

71.     Upon information and belief, based on at least Redline's business of providing the Redline Accused Products that are "bridge lock bar[s]," Redline was aware of the Mathews' Bridge-Lock® Stabilizer. Upon information and belief, based on Mathews providing information regarding patent protection for the Mathews' Bridge-Lock® Stabilizer on its website, combined with Mathews informing Redline via letter of the existence of patents on its stabilizer design, Redline was aware of, or at the very least should have been aware of, the '295 Patent and was knowingly infringing the same when making, importing, selling, and/or offering for sale the Redline Accused Products. Redline unquestionably has been aware of the '295 Patent since the service of this Complaint upon Redline.

72.     Accordingly, upon information and belief as described above, Redline has engaged in acts that infringe the '295 patent with knowledge that, and/or willful blindness to the fact that, the Redline Accused Products infringe the '295 Patent; has disregarded an objectively high likelihood of infringement of the '295 patent; and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of Mathews' rights.

73.     Redline's conduct, including its infringement of the '295 patent is exceptional and entitles Mathews to attorney's fees and costs under 35 U.S.C. § 285.

74.     At least by virtue of serving this Complaint and because Redline knew or should have known of the '295 Patent as discussed above, Redline has been on notice of the infringement of the '295 patent, and its infringement has been and continues to be willful and egregious, entitling Mathews to enhanced damages in accordance with 35 U.S.C. § 284.

75.     As a direct and proximate result of the foregoing acts, Mathews has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Mathews is entitled to recover all damages sustained on account of Redline's infringement, and/or a disgorgement of all gains, profits and advantages obtained by Redline, pursuant to 35 U.S.C. §§ 284 and 289.

76.     Mathews has been irreparably harmed. For example, Redline's introduction of knockoffs to compete with Mathews' unique design harms Mathews' reputation as an innovator and reduces the distinctiveness of Mathews' brand. As a result of Redline's actions, rather than identifying Mathews' unique design with only Mathews, the distinctiveness is blurred in the minds of consumers. Mathews has also lost customer relationships that it would have had but for Redline's infringement.

**COUNT II: INFRINGEMENT OF U.S. DESIGN PATENT NO. D1,049,293 (the "'293 Patent)**

77.　Mathews incorporates by reference the allegations in Paragraphs 1-76 above.

78.　Mathews Archery, Inc. is the owner by assignment of the '293 Patent.

79.　The '293 Patent was duly and legally issued on October 29, 2024.

80.　The '293 Patent protects the ornamental design of the top and bottom rails of the archery bow stabilizer bar.

81.　An exemplary figure from the '293 Patent is shown below with solid lines delineating the claimed design:



*Figure 13. Figure 1 from the '293 Patent.*

82.　The Mathews' Bridge-Lock® Stabilizer embodies the claimed ornamental design of the '293 Patent:

| Mathews' Bridge-Lock® Stabilizer | '293 Patent |
|---|---|



*Figure 14. Top view (left top) and bottom view (left bottom) of the Mathews' Bridge-Lock® Stabilizer; FIG. 1 of the '293 Patent (top right) and FIG. 7 of the '293 Patent (bottom right).*

83.     Redline has and/or continues to make, import, sell, and/or offer to sell the Redline

Accused Products which an ordinary observer would believe are substantially similar to the design

claimed by the '293 patent.

| Exemplary Redline Accused Product | '293 Patent |
|---|---|





FIG. 2

FIG. 3



84.     Redline does not have a license to practice the designs claimed in the '293 patent.

85.     Redline makes, imports, sells, and/or offers for sale the Redline Accused Products, thereby infringing the '293 patent.

86.     Upon information and belief, based at least on Redline's knowledge of Mathews' design patents through its dealings with Mathews (*e.g.*, at least the January 2 letter), Redline had actual knowledge of the '293 patent and that its acts of importing, marketing, advertising, selling, and/or offering for sale the Redline Accused Products constituted infringement of the '293 patent.

87.     Upon information and belief, based on at least Redline's business of providing the Redline Accused Products that are "bridge lock bar[s]," Redline was aware of the Mathews' Bridge-Lock® Stabilizer. Upon information and belief, based on Mathews providing information regarding patent protection for the Mathews' Bridge-Lock® Stabilizer on its website, combined with Mathews informing Redline via letter of the existence of patents on its stabilizer design, Redline was aware of, or at the very least should have been aware of, the '293 Patent and was knowingly infringing the same when making, importing, selling, and/or offering for sale the Redline Accused Products. Redline unquestionably has been aware of the '293 Patent since the service of this Complaint upon Redline.

88.     Accordingly, upon information and belief as described above, Redline has engaged in acts that infringe the '293 patent with knowledge that, and/or willful blindness to the fact that the Redline Accused Products infringe the '293 Patent; has disregarded an objectively high likelihood of infringement of the '293 patent; and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of Mathews' rights.

89.     Redline's conduct, including its infringement of the '293 patent is exceptional and entitles Mathews to attorney's fees and costs under 35 U.S.C. § 285.

90.     At least by virtue of serving this Complaint and because Redline knew or should have known of the '293 Patent as discussed above, Redline has been on notice of the infringement of the '293 patent, and its infringement has been and continues to be willful and egregious, entitling Mathews to enhanced damages in accordance with 35 U.S.C. § 284.

91.     As a direct and proximate result of the foregoing acts, Mathews has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Mathews is entitled to recover all damages sustained on account of Redline's infringement, and/or a disgorgement of all gains, profits and advantages obtained by Redline, pursuant to 35 U.S.C. §§ 284 and 289.

92.     Mathews has been irreparably harmed. For example, Redline's introduction of knock-offs to compete with Mathew's unique design harms Mathews' reputation as an innovator and reduces the distinctiveness of Mathews' brand. As a result of Redline's actions, rather than identifying Mathews' unique design with only Mathews, the distinctiveness is blurred in the minds of consumers. Mathews has also lost customer relationships that it would have had but for Redline's infringement.

**COUNT III: INFRINGEMENT OF U.S. DESIGN PATENT NO. D1,049,294**

93.     Mathews incorporates by reference the allegations in Paragraphs 1-92 above.

94.     Mathews Archery, Inc. is the owner by assignment of the '294 Patent.

95.     The '294 Patent was duly and legally issued on October 29, 2024.

96.     The '294 Patent protects the ornamental design of the top and bottom rails (profiles) of the archery bow stabilizer bar.

97.     An exemplary figure from the '294 Patent is shown below with solid lines delineating the claimed design:



*Figure 15. Figure 2 from the '294 Patent.*

98.     The Mathews' Bridge-Lock® Stabilizer embodies the claimed ornamental design

of the '294 Patent:



| Mathews' Bridge-Lock® Stabilizer | '293 Patent |
|---|---|



*Figure 16. Top view (left) of the Mathews' Bridge-Lock® Stabilizer; FIG. 2 of the '294 Patent (top right) and FIG. 3 of the '294 Patent (bottom right).*

99.     Redline has and/or continues to make, import, sell, and/or offer to sell the Redline Accused Products which an ordinary observer would believe are substantially similar to the design claimed by the '294 patent.





FIG. 2

FIG. 3



FIG. 4

100.    Redline does not have a license to practice the designs claimed in the '294 patent.

101.    Redline makes, imports, sells, and/or offers for sale the Redline Accused Products, thereby infringing the '294 patent.

102.    Upon information and belief, based at least on Redline's knowledge of Mathews' design patents through its dealings with Mathews (*e.g.*, at least the January 2 letter), Redline had actual knowledge of the '294 patent and that its acts of importing, marketing, advertising, selling, and/or offering for sale the Redline Accused Products constituted infringement of the '294 patent.

103.    Upon information and belief, based on at least Redline's business of providing the Redline Accused Products that are "bridge lock bar[s]," Redline was aware of the Mathews' Bridge-Lock® Stabilizer. Upon information and belief, based on Mathews providing information regarding patent protection for the Mathews' Bridge-Lock® Stabilizer on its website, combined with Mathews informing Redline via letter of the existence of patents on its stabilizer design, Redline was aware of, or at the very least should have been aware of, the '294 Patent and was

knowingly infringing the same when making, importing, selling, and/or offering for sale the Redline Accused Products. Redline unquestionably has been aware of the '294 Patent since the service of this Complaint upon Redline.

104.     Accordingly, upon information and belief as described above, Redline has engaged in acts that infringe the '294 patent with knowledge that, and/or willful blindness to the fact that, the Redline Accused Products infringe the '294 Patent; has disregarded an objectively high likelihood of infringement of the '294 patent; and has acted, and continues to act, willfully, wantonly, and in deliberate disregard of Mathews' rights.

105.     Redline's conduct, including its infringement of the '294 patent is exceptional and entitles Mathews to attorney's fees and costs under 35 U.S.C. § 285.

106.     At least by virtue of serving this Complaint and because Redline knew or should have known of the '294 Patent as discussed above, Redline has been on notice of the infringement of the '294 patent, and its infringement has been and continues to be willful and egregious, entitling Mathews to enhanced damages in accordance with 35 U.S.C. § 284.

107.     As a direct and proximate result of the foregoing acts, Mathews has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Mathews is entitled to recover all damages sustained on account of Redline's infringement, and/or a disgorgement of all gains, profits and advantages obtained by Redline, pursuant to 35 U.S.C. §§ 284 and 289.

108.     Mathews has been irreparably harmed. For example, Redline's introduction of knockoffs to compete with Mathew's unique design harms Mathews' reputation as an innovator and reduces the distinctiveness of Mathews' brand. As a result of Redline's actions, rather than identifying Mathews' unique design with only Mathews, the distinctiveness is blurred in the minds

of consumers. Mathews has also lost customer relationships that it would have had but for Redline's infringement.

## COUNT IV: FEDERAL TRADEMARK INFRINGEMENT (LANHAM ACT § 32, 15 U.S.C. §1114(1)(A))

109.    Mathews incorporates by reference the allegations in Paragraphs 1-108 above.

110.    Mathews owns prior and superior trademark rights in its federally registered BRIDGE-LOCK Mark, namely U.S. Trademark Registration No. 7629396 for the mark BRIDGE-LOCK, which was first used at least as early as October 21, 2021.

111.    Mathews has continuously used the BRIDGE-LOCK Mark in commerce and has established substantial commercial strength, consumer recognition and goodwill in its BRIDGE-LOCK Mark.

112.    Redline's wrongful adoption and unauthorized use in interstate commerce of the Infringing BRIDGE Marks on or in connection with the marketing, advertising, promotion and sale of its products and services is calculated and is likely to cause confusion, to cause mistake or to deceive consumers and the relevant public as to sponsorship, authorization, affiliation, connection, association or permission because a significant number of consumers are likely to mistakenly believe that Redline's products are marketed, sold, rendered or authorized by or connected, affiliated or related to Mathews, when they are not.

113.    Redline's unauthorized use of the Infringing BRIDGE Marks on products, product packaging, its website, social media, e-commerce sites and in marketing, advertising, promotions and solicitations of its products/services, capitalizes on the goodwill and reputation of the BRIDGE-LOCK Mark.

114.    Redline has used and continues to use in commerce confusingly similar and colorable imitations of Mathews' BRIDGE-LOCK Marks in connection with archery and

bowhunting products, including stabilizers, which are likely to cause consumer confusion, mistake and deception. Such use by Redline of the Infringing BRIDGE Marks, as alleged herein and affecting interstate commerce constitutes trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

115.    As a proximate result of the unlawful acts of Redline as alleged herein, Mathews has suffered and without judicial intervention, will continue to suffer great damage to its business, marks, goodwill, reputation, and profits, while Redline profits at Mathews' expense. Mathews has been damaged and is likely to continue to be damaged by Redline's infringement of the BRIDGE-LOCK Marks, and Mathews seeks and is entitled to recover Redline's profits from the infringement and the costs of this action pursuant to 15 U.S.C. §1117(a).

116.    By committing the acts alleged herein, Redline has intentionally, knowingly and/or willfully infringed the registered BRIDGE-LOCK Mark with the intent to unfairly benefit commercially and financially at Mathews' expense. This case is exceptional in light of Redline's willful use of the Infringing BRIDGE Marks as alleged, notwithstanding Mathews' demands that Redline cease and desist from further acts of infringement. Because this case is exceptional Mathews is also entitled to recover its attorneys' fees incurred pursuing this action pursuant to 15 U.S.C. §1117(a).

117.    Mathews has no adequate remedy at law for the infringement of its registered trademark as alleged herein. Redline's activities as alleged have caused and, unless enjoined, will continue to cause irreparable harm and injury to Mathews and the goodwill it has established in its BRIDGE-LOCK Mark and products over the course of several years.

## COUNT V: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (LANHAM ACT §43(A), 15 U.S.C. §1125(A))

118.    Mathews incorporates by reference the allegations in Paragraphs 1-117 above.

119.    Mathews has established commercially strong common law rights in and to the BRIDGE-LOCK Mark through continuous use of the mark since at least as early as October 21, 2021 through to the present in connection with archery products. The BRIDGE-LOCK Marks is an inherently distinctive mark, has acquired distinctiveness and commercial strength through use, and has become associated with Mathews and exclusively identify Mathews' products.

120.    By reason of Redline's wrongful use of the Infringing BRIDGE Marks and/or other colorable imitations of the BRIDGE-LOCK Marks, in connection with its stabilizers for archery and bowhunting, consumers of Redline's products are likely to be confused, mistaken or deceived into believing that Redline's products marketing in connecting with the Infringing BRIDGE Marks originate from, are sponsored or otherwise approved by, affiliated, connected or associated with Mathews, when in fact Redline has no connection whatsoever to Mathews in regard to such products.

121.    Redline's unauthorized, misleading and willful use of the Infringing BRIDGE Marks as asserted, or copies or colorable imitations thereof, and the unlawful actions described herein constitute unfair competition, false designation of origin, false or misleading descriptions or representations of fact, and trademark infringement, which is likely to cause confusion, or to cause mistake or to deceive consumers as to an affiliation, connection or association between Mathews and Redline or as to the origin, sponsorship or approval of Redline's products, in and affecting interstate commerce all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

122.    Mathews has no control over the nature or quality of the products and services marketed, offered for sale or sold by Redline in connection with the Infringing BRIDGE Marks.

Further, any failure, neglect or default of Redline in providing good and marketable products to consumers will negatively reflect upon Mathews, its goodwill and reputation.

123.    As a proximate result of the acts of Redline as alleged herein, Mathews has suffered and without court intervention will continue to suffer great damage to its business, marks, goodwill, reputation, and profits, while Redline profits at Mathews' expense.

124.    Redline acted willfully and deliberately after being placed on notice by Mathews of its wrongdoing, with the intent to unfairly commercially and financially benefit at Mathews' expense. This case is exceptional in light of Redline's' willful use of the Infringing Bridge Marks as alleged, notwithstanding Mathews' demands that Redline cease and desist from further acts of infringement and unfair competition. Because this case is exceptional Mathews is also entitled to recover its attorneys' fees incurred pursuing this action pursuant to 15 U.S.C. §1117(a).

125.     Mathews has no adequate remedy at law for Redline's acts constituting unfair competition and infringement of the BRIDGE-LOCK Marks. Unless Redline is permanently enjoined by the Court, Mathews will continue to suffer irreparable harm.

## COUNT VI: TRADEMARK INFRINGEMENT UNDER OHIO COMMON LAW

126.    Mathews incorporates by reference the allegations in Paragraphs 1-125 above.

127.    Mathews' BRIDGE-LOCK Mark is inherently distinctive, commercially strong and/or has acquired strong secondary meaning. Mathews has used the BRIDGE-LOCK Mark for archery products for more than 3 years and well before Redline's adoption of the Infringing BRIDGE Marks. Mathews has used the BRIDGE-LOCK Mark for archery stabilizers well before Redline's adoption of the Infringing BRIDGE marks. Such mark has become extensively known and associated in the minds of the public exclusively with Mathews' business, products and services.

128.     Mathews owns valid common law trademark rights in and to its BRIDGE-LOCK Mark and variants thereof.

129.     Redline's unlawful deceptive and infringing practices, and other conduct as described above, particularly the unauthorized use of the Infringing BRIDGE Marks, constitute trademark infringement of Mathews' exclusive trademark rights in its BRIDE-LOCK Mark in violation of Ohio common law.

130.     By these actions, Redline has appropriated marks confusingly similar to the BRIDGE-LOCK Mark at no cost to themselves.

131.     As a proximate result of the willful acts of Redline as alleged herein, Mathews has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits, while Redline profits at Mathews' expense.

132.     Redline acted willfully and deliberately after being placed on notice by Mathews of its wrongdoing, with the intent to unfairly commercially benefit at Mathews' expense.

133.     Redline's infringement as asserted herein has irreparably injured the recognition and goodwill associated with the BRIDGE-LOCK Mark. Mathews has no adequate remedy at law against this infringement. Unless Redline is permanently enjoined by the Court, Mathews will continue to suffer irreparable harm.

134.     Redline's actions and unauthorized use of the Infringing BRIDGE Marks as asserted herein were committed intentionally, willfully and wantonly. Mathews is therefore entitled to an award of punitive damages as an example and by way of punishing Redline.

### COUNT VII: UNFAIR COMPETITION UNDER OHIO COMMON LAW

135.     Mathews incorporates by reference the allegations in Paragraphs 1-134 above.

136.     The BRIDGE-LOCK Mark is inherently distinctive, commercial strong and/or has acquired strong secondary meaning in connection with archery products, including, stabilizers and

related goods, as a result of Mathews' prominence in the marketplace and extensive advertising, promotion and sale of goods and services under or in connection with the mark.

137.    Mathews owns valid common law trademark rights in and to the BRIDGE-LOCK Mark.

138.    Redline's wrongful use of the Infringing BRIDGE Marks, which are likely to cause confusion with Mathews' BRIDGE-LOCK Mark, constitutes a false designation of origin, false or misleading description of fact, and false or misleading representation of fact, which are likely to cause consumer confusion, deception or mistake.

139.    Redline's unauthorized use of the Infringing BRIDGE Mark and wrongful actions as asserted herein constitutes unfair competition in violation of Ohio common law.

140.    As a proximate result of Redline's actions, Mathews has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits., while Redline is profiting at Mathews' expense.

141.    Mathews has no adequate remedy at law for Redline's unfair competition. Unless Redline is permanently enjoined by the Court, Mathews will continue to suffer irreparable harm.

142.    On information and belief, Redline's wrongful actions and unauthorized use of the Infringing BRIDGE Marks as asserted herein were committed intentionally, willfully and wantonly. Mathews is therefore entitled to an award of punitive damages as an example and by way of punishing Redline.

## COUNT VIII: VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT
## OHIO REVISED CODE §§ 4165.02(A)(2) AND (A)(3)

143.    Mathews incorporates by reference the allegations in Paragraphs 1-142 above.

144.    Redline's unauthorized use of the Infringing BRIDGE Marks and unlawful improper and infringing acts with regard to the Mathews BRIDGE-LOCK Mark by Redline will

cause a likelihood of confusion or misunderstanding as to the source, sponsorship or approval of Redline's goods, or will cause a likelihood of confusion or misunderstanding as to the affiliation, connection or association of Redline with Mathews and it products identified by its BRIDGE-LOCK Mark and therefore constitutes deceptive trade practices in violation of Ohio Revised Code §§ 4165.02(A)(2) and (A)(3).

145.    As a result of said trademark infringement and unfair competition in violation of Ohio Revised Code §§ 4165.02(A)(2) and (A)(3), Mathews has suffered, is suffering and will continue to suffer irreparable damage, and unless Redline is restrained from continuing to engage in said trademark infringement and unfair competition, the damage to Mathews will increase.

146.    On information and belief, Redline's wrongful actions and unauthorized use of the Infringing BRIDGE Marks as asserted herein were committed intentionally, willfully and wantonly.

147.    Mathews has no adequate remedy at law for Redline's infringement and unfair competition. Unless Redline is permanently enjoined by the Court, Mathews will continue to suffer irreparable harm.

## JURY DEMAND

148.    Pursuant to Federal Rule of Civil Procedure 38(b), Mathews hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mathews respectfully prays for entry of judgment as follows:

i.      That Redline has infringed and continues to infringe the '295 patent;

ii.     That Redline shall be enjoined from further infringement of the '295 patent;

iii.  That Mathews recover all damages arising from Redline's infringement of the '295 Patent, but in no event less than a reasonable royalty;

iv.  That Mathews recover a disgorgement of Redline's profits from infringement of the '295 Patent;

v.  That Redline has infringed and continues to infringe the '293 patent;

vi.  That Redline shall be enjoined from further infringement of the '293 patent;

vii.  That Mathews recover all damages arising from Redline's infringement of the '293 Patent, but in no event less than a reasonable royalty;

viii.  That Mathews recover a disgorgement of Redline's profits from infringement of the '293 Patent;

ix.  That Redline has infringed and continues to infringe the '294 patent;

x.  That Redline shall be enjoined from further infringement of the '294 patent;

xi.  That Mathews recover all damages arising from Redline's infringement of the '294 Patent, but in no event less than a reasonable royalty;

xii.  That Mathews recover a disgorgement of Redline's profits from infringement of the '294 Patent;

xiii.  That Redline's infringement of the '295 patent has been and continues to be willful;

xiv.  That Mathews recover all enhanced damages it is entitled under 35 U.S.C. § 284 for Redline's willful infringement of the '295 Patent.

xv.  That Redline's infringement of the '293 patent has been and continues to be willful;

xvi.  That Mathews recover all enhanced damages it is entitled under 35 U.S.C. § 284 for Redline's willful infringement of the '293 Patent.

xvii.  That Redline's infringement of the '294 patent has been and continues to be willful;

xviii.   That Mathews recover all enhanced damages it is entitled under 35 U.S.C. § 284 for Redline's willful infringement of the '294 Patent.

xix.   That Mathews recover all gains, profits and advantages obtained by Redline under 35 U.S.C. § 289 for its infringement of each of the Asserted Patents.

xx.   That Mathews, as the prevailing party, shall recover from Redline all taxable costs of court;

xxi.   That Mathews shall recover from Redline all pre- and post-judgment interest on the damages award, calculated at the highest interest rates allowed by law;

xxii.   That this case is exceptional in light of willful infringement by Redline and that Mathews shall therefore recover its attorneys' fees and other recoverable expenses, under 35 U.S.C. § 285;

xxiii.   That Defendant and its subsidiaries, affiliates, parent corporations, agents, servants, employees and representatives thereof, and all other persons, firms or corporations in active concert or participation with them, be permanently enjoined and restrained from using the name or mark BRIDGE, BRIDGE Series, BRIDE-LOCK or variant, or any other name containing Plaintiff's mark BRIDGE-LOCK or any component confusingly similar thereto;

xxiv.   That defendant, pursuant to 15 U.S.C. 1116(a), be directed to file with this Court and serve upon Plaintiff within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which they have complied with the injunction;

xxv.   That Mathews recover its damages sustained and Defendant's profits made as a result of Defendant's wrongful acts complained of herein, including for trademark

infringement, unfair competition and violating the Ohio Deceptive Trade Practices Act §§ 4165.02(A)(2) AND (A)(3);

xxvi. That Mathews be awarded three times Defendant's profits made as a result of the wrongful acts complained of herein, or three times EDS's damages, whichever is greater;

xxvii. That this case be deemed an exceptional case pursuant to 15 U.S.C. 1117(a) and (b) and that defendant be deemed liable for and be ordered to reimburse Mathews for its actual attorneys' fees;

xxviii. That Mathews be awarded punitive and exemplary damages under Ohio state law for Defendant's willful and intentional acts trademark infringement, unfair competition and violating the Ohio Deceptive Trade Practices Act §§ 4165.02(A)(2) AND (A)(3);

xxix. That Mathews recover the costs of this action; and

xxx. That Mathews shall recover such other and further favorable relief as the Court deems appropriate.

Dated: January 9, 2025

Respectfully submitted,

BAILEY CAVALIERI LLC

/s/ *Christopher Tackett* /s/

Christopher W. Tackett
Ohio Bar No. 0087776
Graycen M. Wood
Ohio Bar No. 0102160
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215
Telephone: (614) 229-3286
Fax: (614) 221-0479

**OF COUNSEL:**
BAKER BOTTS L.L.P.

David Wille (*pro hac vice* forthcoming)
Texas Bar No. 785250
david.wille@bakerbotts.com
Doug Kubehl (*pro hac vice* forthcoming)
Texas Bar No. 796909
doug.kubehl@bakerbott.com
Matthew Chuning (*pro hac vice* forthcoming)
Texas Bar No. 24121538
matthew.chuning@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6595
Facsimile: (214) 953-4595

*Attorneys for Mathews Archery, Inc.*

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Mathews hereby demands a trial by jury of all issues so triable.

  /s/  Christopher Tackett     /s/
Christopher W. Tackett (0087776)

46